UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEFFREY YOUNG,

                       Plaintiff,

                                                            **Hon. Hugh B. Scott**

                       v.

                                                             04CV320A

                                                              **Report
&amp;
Recommendation**

GEORGE POFF, et al.,

                       Defendants.

     This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 5). The instant matter before the Court is defendants' joint motion (Docket No. 20) for summary judgment.

## **BACKGROUND**

     Defendants (employees of the New York State Department of Correctional Services at the Attica Correctional Facility ("Attica") when plaintiff was an inmate there) moved for summary judgment to dismiss the Complaint in this action (Docket No. 20). During the period at issue here, defendant George Poff was a sergeant at Attica (Docket No. 21, Defs. Statement ¶ 1), defendants Steve Kaczmarek and James Diebel were correctional officers at Attica (id. ¶¶ 2, 3), while defendant Roger Hagmier was a registered nurse at that facility (id. ¶ 4).

     Plaintiff commenced this civil rights action against these defendants alleging that the correctional officers sexually and physically assaulted him, used excessive force against him in

violation of his Eighth Amendment rights against cruel and unusual punishment, and that Poff failed to intervene to protect plaintiff's rights, all arising from an incident in March 28, 2004. He also alleges that nurse Hagmier violated plaintiff's Eighth Amendment rights by acting with deliberate indifference to plaintiff's medical needs and by violating his right to patient/nurse confidentiality by disclosing his condition to correctional officers (including Poff).

*Defense Version of Events*

On March 28, 2004, at 7:20 pm[1], Poff selected plaintiff for a random pat frisk, and Kaczmarek conducted that frisk (id. ¶ 5). Defendants claim that Kaczmarek conducted a proper frisk (id.; Docket No. 23, Kaczmarek Decl. ¶ 3; Docket No. 24, Diebel Decl. ¶ 4; Docket No. 22, Poff Decl. ¶ 4). Kaczmarek admits to conducting the frisk (Docket No. 23, Kaczmarek Decl. ¶ 3), while in earlier testimony at plaintiff's disciplinary hearing he said that he did not frisk plaintiff (Docket No. 31, Pl. Decl. ¶ 26, Ex. 3 (transcript at 60)). When the frisk was completed, plaintiff retrieved his property and proceeded down the yard, but then without warning or provocation, plaintiff attacked Diebel by throwing his closed fists at Diebel and hitting him once in the chest (Docket No. 23, Kaczmarek Decl. ¶¶ 4-5; Docket No. 24, Diebel Decl. ¶ 5). Diebel then restrained plaintiff with Kaczmarek (Docket No. 24, Diebel Decl. ¶¶ 5-6; Docket No. 23, Kaczmarek Decl. ¶ 6). Diebel grabbed plaintiff's left wrist as plaintiff hit him, Diebel then pulled plaintiff toward him and Diebel grabbed plaintiff's left shoulder of his shirt with Diebel's

---

[1]While the declarations and defense statement of facts states that this occurred in the morning, Docket No. 21, Defs. Statement ¶ 5; Docket No. 23, Kaczmarek Decl. ¶ 3; Docket No. 22, Poff Decl. ¶ 3; see also Docket No. 24, Diebel Decl. ¶ 4 the attached documents state that the incident occurred 7:20 pm, e.g., Docket No. 23, Kaczmarek Decl. Ex. A; Docket No. 22, Poff Decl. Ex. A. Plaintiff's escort from Special Housing Unit to his medical examination occurred at 7:29 pm, Docket No. 31, Pl. Decl. Ex. 2.

free hand. Diebel turned to his right, bringing plaintiff to the ground (Docket No. 24, Diebel Decl. ¶ 5). Plaintiff landed on his left side with Diebel on top of him. Diebel then controlled plaintiff's hands and handcuffed him while plaintiff was pinned to the ground (see id. ¶ 6). Kaczmarek grabbed plaintiff's ankles and pressed down until plaintiff became compliant (Docket No. 23, Kaczmarek Decl. ¶ 6). They turned plaintiff over to other officers who escorted plaintiff to the Reception Building, where he was examined by defendant Hagmier and use of force photographs were taken of plaintiff (Docket No. 23, Kaczmarek Decl. ¶¶ 7-8). Kaczmarek (id. ¶¶ 10, 11) and Diebel (Docket No. 24, Diebel Decl. ¶¶ 12, 13) each deny sexually molesting plaintiff. Poff denies witnessing any sexual molestation or kicking of plaintiff or other improper conduct against plaintiff by the other officers and that Poff would have to prevent this conduct as a correctional sergeant (Docket No. 22, Poff Decl. ¶¶ 11-12). Defendants contend that the force used upon plaintiff during this incident was appropriate and necessary to stop plaintiff's assault of Diebel and to prevent injury to Diebel by plaintiff (id. ¶ 14; Docket No. 24, Diebel Decl. ¶¶ 8, 13, 17).

     Defendant Hagmier examined plaintiff following this incident and found no visible injuries and no treatment was indicated (Docket No. 25, Hagmier Decl. ¶¶ 3, 4), commenting that plaintiff "did not have a scratch on him" (id. ¶ 5). Plaintiff was examined only in his briefs (id. ¶ 4, see id. ¶ 7, Ex. B (photographs of plaintiff following incident)) and he complained of a headache and pain bilaterally on both knees (id. ¶ 4). Hagmier found that plaintiff's alleged injuries did not require urgent care and did not cause death, degeneration or extreme pain (id. ¶ 5). Plaintiff did not make any further complaints to Hagmier and plaintiff's inmate medical records indicate that he did not seek medical attention since March 28, 2004 (id. ¶¶ 8, 10, Ex. C).

*Plaintiff's Version of Events*

Plaintiff argues that material issues of fact exist and disagrees with the defense version of events. He claims that the pat down frisk was conducted in an illegal manner, that he was physically and sexually assaulted by Kaczmarek and Diebel during the frisk, while Poff was present (Docket No. 30, Pl. Statement ¶ 2; Docket No. 31, Pl. Decl. ¶¶ 2, 8-11). Plaintiff argues that there was video coverage of his movements during the incident and his transfer from the exercise yard to the Special Housing Unit would substantiate his version of the events (Docket No. 31, Pl. Decl. ¶ 23, Ex. 1), but he cites only to his request for production of the videotape as part of his disciplinary proceeding. Plaintiff does not produce the tapes. Defendants denied the existence of such a tape (id. ¶ 23). According to defendants' discovery response, any such tape was recycled and no longer exists (Docket No. 11, Defs.' Response to Pl. Request No. 2). Plaintiff also claims that defendants testified falsely about the incident (Docket No. 31, Pl. Decl. ¶ 26).

Plaintiff claims that Hagmier violated nurse/patient confidentiality by discussing his condition with a sergeant and correctional officer (Docket No. 1, Compl. ¶ 27; Docket No. 31, Pl. Decl. ¶ 21), and later Poff was informed of plaintiff's condition in further violation of that confidentiality (Docket No. 1, Compl. ¶ 27; Docket No. 31, Pl. Decl. ¶ 21). Plaintiff reported feeling pain in his knees, kidneys, head and ribs, and was given Tylenol, Ibuprofen, and Motrin for his complaints (Docket No. 31, Pl. Decl. ¶ 22; see Docket No. 29, Pl. Memo. of Law at 5).

*Motion for Summary Judgment*

Defendants made their motion for summary judgment. This Court issued a briefing schedule, with responses to this motion due by December 9, 2005, any reply due by December 23, 2005, and the motion then deemed submitted as of December 23, 2005 (Docket No. 27). Plaintiff submitted his response to the motion (Docket Nos. 29-32), but defendants did not submit any reply papers.

## DISCUSSION

I.  Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he

nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

II.     Use of Force

A violation of the Eighth Amendment's prohibition against cruel and unusual punishment occurs when "unnecessary and wanton infliction of pain occurred." Whitley v. Albers, 475 U.S. 312, 319 (1986). Complaints need to be "sufficiently serious" to be cruel and unusual. Farmer v. Brennan, 511 U.S. 825, 834 (1994). This standard has an objective and subjective component. Whether the use of force creates an injury that would constitute cruel and unusual punishment is determined by whether the force was applied in a good faith effort to maintain discipline or was used maliciously and sadistically to cause harm. Whitley, supra, 475 U.S. at 320-21. (Docket No. 26, Defs. Memo. of Law at 3).

Defendants contend that the use of force against plaintiff was reasonable and was done to maintain order, secure the facility, and to protect the officers (id. at 3-4). Kaczmarek and Diebel used sufficient force to subdue plaintiff after he assaulted Diebel (id.). Hagmier's use of force report found that plaintiff suffered no injury as a result of the incident (id. at 4). They conclude that any use of force against plaintiff on March 28, 2004, was de minimus. Even accepting plaintiff's version of the facts as true regarding a sexual assault, defendants argue that he alleges only one instance of sexual assault and that is not sufficient to state an Eighth Amendment claim for sexual harassment or abuse, see Boddie v. Snyder, 105 F.3d 857, 862 (2d Cir. 1997) (id. at 5). As for Poff, defendants contend that he was not personally involved in the incident and there was

nothing for him to prevent the other defendants from doing to make him liable as a supervisor (id. at 8).

Plaintiff argues that there are material issues of fact whether he was assaulted or sexually assaulted by defendants Kaczmarek and Diebel.  Plaintiff repeats his allegations supported by his contention that the incident was videotaped, as noted in defendants' own documents (Docket No. 30, Pl. Statement ¶ 5; Docket No. 31, Pl. Decl. Ex. 2).  But, defendants note that any such tape was recycled and not preserved.  As for defendant Poff, plaintiff alleges that Poff picked plaintiff out for pat frisk that lead to the assault (Docket No. 31, Pl. Decl. ¶ 2).

Plaintiff raises an issue of material fact whether the use of force by defendant Kaczmarek and Diebel here was reasonable or excessive.  The basis for these issues of fact rest exclusively upon a videotape recording that now does not exist and his declaration of the version of the facts (which is almost identical to his allegations in the Complaint).  Plaintiff has not moved to compel production of the tape or for sanctions (such as evidentiary or issue preclusion) for defendants' failure to preserve or produce the tape. But plaintiff relies upon a memo from the escorting sergeant to the deputy superintendent for security which stated that camera coverage was used, with correctional officer Nowak as the camera operator (Docket No. 31, Pl. Decl. Ex. 2). According to that memorandum, however, it discussed plaintiff's escort between cells from 7:29 to 7:33 pm after the incident (at approximately 7:20 pm, according to plaintiff, id. Pl. Decl. ¶ 4) and the form also denied the use of force (id. Pl. Decl. Ex. 2).  That memorandum list three other officers who escorted plaintiff other than defendants Kaczmarek and Diebel (id.) and does not discuss the incident or how the escort was conducted.  Inherent in that issue is a factual question

about the level of force used and its reasonableness under the circumstances. Thus, as to this portion of plaintiff's claim, defendants' motion for summary judgment should be **denied**.

As for the sexual assault aspect of plaintiff's claim, plaintiff fails to establish that defendants are not entitled to judgment as a matter of law. Plaintiff alleges only a single instance of sexual contact which is not sufficient to establish a violation of his rights. As for defendant Poff, plaintiff only established that Poff selected plaintiff for the pat frisk; plaintiff did not establish that Poff called upon the other correctional officers to use any level of force or that Poff had a supervisory role over those officers. Thus, as to Poff, he should be **entitled to summary judgment** to dismiss this claim against him and defendants should be **granted** summary judgment dismissing plaintiff's sexual assault charge.

III.     Deliberate Indifference to Plaintiff's Medical Needs

   A.     Standard

Plaintiff asserts a deliberate indifference claim under the Eighth Amendment, and as such has the burden of proving that defendants acted with deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Eighth Amendment prohibits infliction of "cruel and unusual punishments" which includes punishments that "involve the unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976) (citations omitted); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). The Eighth Amendment applies to prison officials when they provide medical care to inmates. Hathaway, supra, 37 F.3d at 66; see Estelle, supra, 429 U.S. at 103. "To establish an unconstitutional denial of medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Hathaway,

supra, 37 F.3d at 66 (quoting Estelle, supra, 429 U.S. at 104).  Mere negligent treatment or malpractice upon a prisoner, however, does not create an Eighth Amendment violation.  Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972).

This claim has two elements, an objective component, that the deprivation must be sufficiently serious; and a subjective component, that the defendant official must act with sufficiently culpable state of mind.  Hathaway, supra, 37 F.3d at 66.  "Sufficiently serious" for the objective component contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain."  Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (quoted in Hathaway, supra, 37 F.3d at 66).  Plaintiff needs to prove that defendants wantonly intended to cause him to suffer.  Wilson v. Seiter, supra, 501 U.S. at 302.

B.   Application

Here, defendants argue that plaintiff fails the objective test since he has not proven any serious injury or pain (Docket No. 26, Defs. Memo. at 10-11).  Plaintiff only argues that he complained of pain in his head, knees, kidneys, and ribs, and received pain medication (Docket No. 31, Pl. Decl. ¶ 22; Docket No. 29, Pl. Memo. at 5).  This fails to show extreme pain (much less death or degeneration) that would satisfy the objective component of a deliberate indifference claim.  Summary judgment should be **granted** to defendants on this claim.

C.   Nurse/Patient Confidentiality

Plaintiff next claims that Hagmier breached his duty to preserve plaintiff's confidences by telling at least a sergeant and correctional officer and, somehow, Poff that plaintiff was complaining of pain, later informing Poff of plaintiff's condition (Docket No. 29, Pl. Memo. at 4).  Defendants contend that there is no fundamental right to privacy of medical records and such

records can be released for penological purposes (Docket No. 26, Defs. Memo. at 11-13), see Whalen v. Roe, 429 U.S. 589, 602 (1977); see also Jarvis v. Wellman, 52 F.3d 125, 126 (6th Cir. 1995); Adams v. Drew, 906 F. Supp. 1050, 1054-58 (E.D. Va. 1995) (holding prisoner does not have general constitutional right of privacy to his medical records). Although plaintiff does not argue the existence of such a privacy right, this Court has held that inmates have a constitutional right to privacy against disclosure of their medical records and condition, with the Court to determine if such disclosure by prison officials is "'reasonably related to legitimate penological interests,'" Nolley v. County of Erie, 776 F. Supp. 715, 729, 731 (W.D.N.Y. 1991) (Curtin, J.) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)); see also Powell v. Schriver, 175 F.3d 107, 112 (2d Cir. 1999). Defendants argue that the penological interest for Hagmier's disclosure here was to have the other officers photograph plaintiff upon his admission to the infirmary (Docket No. 26, Defs. Memo. at 13). This, however, does not explain Hagmier's alleged subsequent disclosure to Poff, who had no role in plaintiff's photographing. Thus, defendants' motion for summary judgment as to this claim should be **denied in part** regarding Hagmier's disclosure to Poff but **granted in part** as to Hagmier's disclosure to the officers involved in plaintiff's photographing.

IV.   Qualified Immunity

Alternatively, defendants claim that their respective actions were protected by qualified immunity (Docket No. 26, Defs. Memo. at 13-15). Plaintiff did not respond to defendants' qualified immunity claim. When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is do the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right. See Saucier v.

Katz, 533 U.S. 194, 201 (2001). As required by the Saucier Court, this Court first considered (above) the constitutional question, then considered the qualified immunity question, id. The discussion above indicates whether a constitutional violation occurred. Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity." Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

Here, as for the deliberate indifference claim, no constitutional violation was found. Issues of fact were identified as to plaintiff's excessive force and disclosure of medical confidences claims, thus the next inquiry for qualified immunity must be examined, that is, whether it was objectively reasonable for the correctional officers to believe that their actions did not violate plaintiff's rights.

    A.    Kaczmarek and Diebel and Excessive Force

On the excessive force claim, defendants argue that they used appropriate measures to maintain peace, order, and security in the facility to protect themselves and others in the manner in which they subdued plaintiff (Docket No. 26, Defs. Memo. at 13-15). Quoting Saucier, 533 U.S. at 205 (a police excessive force case under the Fourth Amendment, where the defendants sought qualified immunity), defendants note that even the mistake of applying the

excessive force doctrine by a correctional officer, if the officer's mistake is reasonable, the officer is entitled to qualified immunity (id. at 14-15, 15). But their argument above does not concede that the defendants made a mistake in applying the legal standard for use of force.

The issue here, then, is whether it was objectively reasonable for the defendants to believe that their acts did not violate plaintiff's right to be free from the use of excessive force, see Jeanty v. County of Orange, 319 F. Supp. 2d 533, 542 (S.D.N.Y. 2005). A defendant is entitled to qualified immunity in this type of case where a reasonable jury, viewing the evidence in the light most favoring the plaintiff and drawing all favorable inferences for him, could not find that it was objectively unreasonable for defendants to believe they were acting in a fashion that did not clearly violate an established federally protected right. Id. (quoting Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987), quoting in turn Halpern v. Kissinger, 807 F.2d 180, 189 (D.C. Cir. 1986) (Scalia, J., sitting by designation)). Where the underlying facts are not in dispute, the Court can decide the legal question of immunity; but where the facts are disputed, as with this case, "jury consideration is normally required," Kerman v. City of N.Y., 374 F.3d 93, 109 (2d Cir. 2004) (internal citations omitted) (quoted in Jeanty, supra, 319 F. Supp. 2d at 542). As was found in Jeanty, supra, 319 F. Supp. 2d at 542, in an excessive force claim against correctional officers, the same material issues of fact that preclude summary judgment disposition of the merits--the amount of force applied against plaintiff and whether the amount of force used was reasonable--also precludes a determination of the qualified immunity claim. Thus, on this claim, defendants should **not enjoy qualified immunity**. If defendants' version of the incident were accepted, namely that plaintiff attacked Diebel first and suffered no injuries from the incident, another court has noted that "[t]he Second Circuit has held that an admitted assault by a prisoner

on a prison guard does not in and of itself 'preclude a reasonable jury from finding that excessive forces was used against him [by the guard] on the day in question' and that 'the fact that [the prisoner] suffered only minor injuries does not warrant dismissal.'" Brewer v. Jones, No. 02 Civ. 3570, 2003 U.S. Dist. LEXIS 16100, at *13 (S.D.N.Y. Sept. 12, 2003) (quoting Griffin v. Crippen, 193 F.3d 89, 92 (2d Cir. 1999)).

      B.      Hagmier and Disclosure of Medical Confidences

On Hagmier's disclosure of medical information to the photographing correctional officers, defendants contend that he also should enjoy qualified immunity because there was no clearly established statutory or constitutional right prohibiting discussion of plaintiff's complaints with security staff in arranging his photographing (Docket No. 26, Defs. Memo. at 15). Since it is recommended above that the Court grant defendants summary judgment on the merits as to plaintiff's claims regarding Hagmier's disclosure to the photographing officers, the Court need not address his qualified immunity claim on this disclosure. Defendants, however, do not claim qualified immunity for Hagmier's discussion with Poff, unrelated to plaintiff's photographing that revealed plaintiff's medical confidences, thus Hagmier is not entitled to qualified immunity for this disclosure.[2]

**CONCLUSION**

Based upon the above, it is recommended that defendants' motion (Docket No. 20) for summary judgment be **granted in part** as to plaintiff's claims against defendant Poff and plaintiff's deliberate indifference claim, and **denied in part** as to plaintiff's excessive force claim

---

[2]Even if Hagmier were to now claim qualified immunity as to Poff, he has not stated or produced evidence of the penological purpose for disclosure to Poff that may have immunized that action, see Nolley, supra, 776 F. Supp. at 729, 731.

and the alleged violation of plaintiff's medical confidences as described in detail above. Defendants should not enjoy qualified immunity for their respective activities because of the issues of fact arising therefrom or defendants have failed to assert immunity (such as with Hagmier for his alleged disclosure of plaintiff's condition to Poff).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

/s/ Hugh B. Scott<br>
Honorable Hugh B. Scott<br>
United States Magistrate Judge

Dated: Buffalo, New York
      February 9, 2006